UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH SOTO,

                 Plaintiff,

v.

NORMAN MINETA,

                 Defendant.

_____/

CIVIL ACTION NO. 04-70966

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

Plaintiff's Motion for Summary Judgment be granted.

**II.**    **REPORT:**

### A.    Procedural History

Plaintiff's fourteen count Complaint was filed on March 16, 2004. Defendant filed his Answer on May 14, 2004. On the same date, defendant filed a Motion for Partial Dismissal, challenging Counts 1, 2, 6, 13 and 14. When Plaintiff filed no response to the motion, the Court entered an Order Dismissing those counts. A Scheduling Conference was noticed for October 18, 2004.

When Plaintiff's counsel failed to appear for the conference, the district judge entered an Order, on October 26, 2004, directing Plaintiff to show cause in writing why his case should not be dismissed for failure to prosecute. On January 19, 2005, attorney Michael A. Mixer filed his appearance on Plaintiff's behalf, together with a Response to the Order to Show Cause. On January 26, 2005, the case was referred to the magistrate judge

for all pretrial proceedings. On February 2, 2005, Plaintiff's current co-counsel filed her appearance.

A status conference was held on March 30, 2005, and a Scheduling Order was issued on the following day. On April 15, 2005, Plaintiff filed a Motion for the Withdrawal of His Initial Attorney's Appearance. He also filed a Motion for Reconsideration of the Order of Partial Dismissal. Defendant filed his response to the Motion for Reconsideration on April 26, 2005. On June 1, 2005, the magistrate judge entered an Order Directing the Withdrawal of Plaintiff's original counsel.

On July 14, 2005, the magistrate judge granted Plaintiff's Motion for Reconsideration. Discovery and dispositive motion deadlines were adjusted. On July 19, 2005, Defendant filed a Motion to Dismiss Counts 6 (in part), 7, 13 and 14 of the Complaint. Plaintiff filed his response on August 8, 2005. Following a hearing on September 7, 2005, a revised Scheduling Order was issued. On September 26, 2005, the magistrate judge issued a Report and Recommendation that the Motion for Partial Summary Judgment be granted. Plaintiff filed his Objections on October 10, 2005. The deadline for dispositive motions was again extended by Order of October 31, 2005. On January 19, 2006, the court accepted the Report and Recommendation and entered an Order of Dismissal as to Counts 6 (in part), 7, 13 and 14.

The Defendant filed a Motion for Summary Judgment as to the remaining counts of the Complaint on December 16, 2005. Plaintiff filed his Response on January 22, 2006, and Defendant filed a Reply Brief on February 10, 2006. The instant motion was brought on for hearing on February 22, 2006, and taken under advisement pending the submission of supplemental briefs. Defendant filed his Supplemental Brief on March 3, 2006. Plaintiff

filed Supplemental Briefs on March 6 and March 8, 2006, as well as a Response to Defendant's Supplemental Brief on March 17, 2006.

On September 21, 2006, while the instant motion remained under advisement, this action was stayed by Order of the district judge, due to Plaintiff's pending voluntary petition in Bankruptcy. On March 21, 2007, Plaintiff filed his Motion to Reopen the Case. That Motion was referred to the magistrate judge and set for hearing on September 12, 2007. Also set for rehearing on the same date was the instant defense Motion for Summary Judgment. The hearing was adjourned to October 11, 2007. After a hearing on that date, Plaintiff's Motion to Reopen the Case was granted.

### B.     Factual Background

Plaintiff, Joseph Soto ("Soto"), began his service with the United States Department of Transportation, Federal Aviation Administration ("FAA") in 1988. He served assignments in Long Beach, California and Washington, D.C. prior to his transfer, in 1996, to the Detroit Flight Standards District Office ("FSDO"), in Belleville, Michigan. He was initially assigned as Supervisor, PMI, at the Detroit FSDO. Plaintiff is an American citizen of Mexican heritage. He alleges that Defendant discriminated against him on the basis of his national origin, and in retaliation for his prior EEO activities. Specifically, Soto claims that Defendant failed to select him for certain supervisory positions on seven occasions (Counts 1-5, 8, 9); failed to select him for temporary assignments to Grade 14 positions (Count 12), and subjected him to a hostile work environment at the Detroit FSDO (Count 6, Paragraphs 114-148, 155-158).

In Paragraphs 10-57 of the Complaint, Plaintiff describes a series of conflicts between himself and other FAA employees at the Belleville location. Specifically, he

alleges that David Hobgood, who was the Office Manager for the Detroit FSDO, denied travel vouchers submitted in connection with Plaintiff's permanent change of station from California to Michigan, denied sick leave and compensatory leave requests, issued Plaintiff a letter of reprimand for failure to request appropriate leave prior to leaving the FSDO office, assigned Plaintiff inappropriately low ratings on work appraisals, placed Plaintiff on an opportunity to demonstrate performance plan ("ODP") and threatened him with a "reduction in grade, removal, or assignment" if he did not succeed with the plan, solicited negative information regarding Plaintiff from other employees, and recommended that Plaintiff be removed from supervision and demoted to a grade 13 position because he had not filled a grade 14 position in the field. Soto alleges that he applied for, but was denied a position as Acting Office Manager in the Detroit FSDO and that he was denied transfers to positions for which he was eligible in Las Vegas, Nevada, San Diego, Fresno and Sacramento, California, and Houston, Texas. Many additional factual allegations are set out in the balance of Soto's 14 individual discrimination, retaliation and hostile work environment claims. They will be summarized in the course of analysis as to each separate count.

        **C.**    **<u>Applicable Law and Standard of Review</u>**

                **1.**    **<u>Summary Judgment Standard</u>**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a

matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an essential element of the party's case on which that party bears the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which a jury could reasonably find for the non-moving party. <u>Hopson v. Daimler Chrysler Corp.</u>, 306 F.3d 427, 432 (6th Cir. 2002).

## 2. <u>Burden Shifting Approach Applied to Title VII Discrimination Claims</u>

Plaintiff has the burden of proof on his discrimination and retaliation claims under Title VII. He must present either (1) direct evidence of the alleged discrimination and/or retaliation because of his protected activity or (2) circumstantial evidence that creates an inference of unlawful discrimination and/or retaliation for engaging in protected activity. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." <u>Jacklyn v.</u>

Schering-Plough Health Care Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999).  If a plaintiff does not present direct evidence in support of his discrimination and/or retaliation claims under Title VII, the claims are governed by the burden shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792, 1973 and Texas Department of Community Affairs v. Burdine, 405 U.S. 248 (1981).

Under the McDonnell Douglas approach, a plaintiff must first make out a prima facie case.  If the plaintiff establishes a prima facie case of discrimination or retaliation, the defendant can rebut the presumption of unlawful discrimination or retaliation by "articulat[ing] some legitimate, non-discriminatory reason" for the adverse employment action.  Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000).  "This burden is one of production, not persuasion; it can involve no credibility assessment."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993) (internal quotes and citations omitted).

If the Defendant meets this burden, then the Plaintiff must come forward with evidence showing that the Defendant's proffered reason is a mere pretext for unlawful discrimination.  Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003).  The Plaintiff can establish pretext by showing that the Defendant's proffered legitimate, non-discriminatory reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

### 3.    Prima Facie Case

In order to prove a prima facie case of discrimination based upon failure to promote, a plaintiff must show that: "(1) he is a member of a protected class, (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion, and (4)

6

other employees of similar qualifications who were not members of the protected class received the position at the time that Plaintiff's request for promotion was denied." <u>Nguyen v. City of Cleveland</u>, 229 F.3d 559, 562-63 (6th Cir. 2000). In order to establish a disparate treatment claim regarding his transfer requests, Plaintiff must prove that: (1) he was treated differently from similarly situated FAA employees, and (2) any difference in treatment was based upon intentional discrimination, as opposed to some other business reason. <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567 (1978); <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582-83 (6th Cir. 1992).

A prima facie case of retaliation for engaging in protected EEO activities requires different elements. As to such claims, a plaintiff must prove that: (1) he participated in an activity protected by Title VII; (2) his employer knew of his participation; (3) an adverse employment action occurred against Plaintiff, or Plaintiff was subjected to severe and pervasive retaliatory harassment by a supervisor; and (4) there was a causal link between the protected activity and the adverse action. <u>Morris v. Oldham County Fiscal Court</u>, 201 F.3d 784, 792 (6th Cir. 2000).

Plaintiff asserts in his Response to Defendant's Motion for Summary Judgment that he has both direct and circumstantial evidence of discrimination, retaliation and hostile work environment. As stated above, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action. <u>Jacklyn v. Shearing Plow Health Care Prods. Sales Corp.</u>, 176 F.3d 921, 926 (6th Cir. 1999). Once a plaintiff has produced credible direct evidence, the burden shifts to the employer to show that it would have taken the employment action of which the plaintiff complains even in the absence of discrimination. <u>Id</u>. It is well at the outset, then, to examine Soto's claim that he has direct evidence of discrimination.

Plaintiff argues that he has produced two forms of direct evidence of discrimination: (1) testimony by John R. Harrington at a June 6, 2003 MSPB hearing related to Mr. Soto's demotion that he had heard Todd Pearson tell other witnesses that the FAA had a communication network by which information about "bad apples" in the agency was exchanged "to prevent them from moving to other regions" and (2) statistical evidence that Hispanic persons were under-represented in the federal workforce in general, and in the Department of Transportation in particular, during the relevant time period in this case. (Plaintiff's Brief, Pages 14 and 15).

Todd Pearson is mentioned only in Count 6 of Plaintiff's Complaint. There is no evidence that Pearson had any responsibility for, or that he participated in any way in, the personnel decisions denying Plaintiff the transfers which are the subject of Counts 1 through 5, 8, 9 and 12 of the Complaint. The Sixth Circuit has declared that comments made by individuals who are not involved in the decision making process regarding a plaintiff's employment do not constitute direct evidence of discrimination because they do not compel the inference of unlawful discrimination on the part of the decision makers. Carter v. University of Toledo, 349 F.2d 269, 273 (6th Cir. 2003); Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 433 (6th Cir. 2002).

With respect to the allegations in Counts 6 and 12 of the Complaint, the alleged comments by Pearson have no relevance, as there is no claim that the actions taken against Plaintiff during his tenure at the Detroit FSDO were in any way the result of conduct or input originating from any other location. Thus, I conclude that the Pearson statements are not direct evidence of discrimination against Plaintiff as alleged in any Count remaining in issue.

Similarly, statistical evidence of under-representation by members of protected classes in an employment setting is not direct evidence of unlawful discrimination, because it does not "lead ineluctably" to the conclusion that the employer considered discriminatory criteria in eliminating the Plaintiff from consideration for a position for which he had applied. Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006).

Because neither Pearson's alleged statement nor Plaintiff's statistical analysis requires a conclusion of unlawful discrimination, neither constitutes direct evidence. Thus, Plaintiff must establish his claims, if at all, by way of the McDonnell Douglas burden shifting approach.

## Count 1

On July 18, 2001, the Western-Pacific Region of FAA issued vacancy announcement AWP-FS-01-13LRS-58167M with regard to a supervisory aviation safety inspector position, FV-1825-J in Sacramento, California. On July 24, 2001, Plaintiff notified the Defendant that he had an IPP hardship request on file with the Western-Pacific Region. Such a request is a vehicle for FAA employees who, for personal reasons, wish to be transferred to an available position at another duty station. Plaintiff applied for the Sacramento position, and he was subsequently included on a list of best qualified candidates. Nonetheless, on October 29, 2001, Dan McGehee, Manager of the Sacramento FSDO, promoted Peter Wilhelmsen, a caucasian male to the announced position.

Defendant argues that Plaintiff has failed to establish the fourth prong of his prima facie case, that is, that he had similar qualifications to the FAA employee who was selected (Wilhelmson). "Under the fourth prong, because this is a failure to promote case, Plaintiff

must show that the employer treated differently employees who were similarly situated but not members of the protected group." <u>Zambetti v. Cuyahoga Cmty. Coll.</u>, 314 F.3d 249, 255 (6th Cir. 2002).

> Some comparison between [plaintiff] and [the selected, non-protected employee] is therefore necessary in considering the fourth prong of the prima facie case. Engaging in such a comparison does not impermissibly conflate the two stages of the McDonnell Douglas test, for just as the court must independently review the plaintiff's qualifications in determining whether the plaintiff has met the second prong of [his] prima facie burden, so too does the court conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of [his] prima facie burden.

<u>White v. Columbus Metropolitan Housing Authority</u>, 429 F.3d 232, 243 (6th Cir. 2005).

Plaintiff correctly observes that he need not establish that he had the same qualifications as the person selected, but only that he had similar qualifications. Soto observes that "he was on a best qualified list or was otherwise referred for consideration . . ., therefore he was sufficiently similar to the candidate[ ] selected to establish a prima facie case of discrimination." (Plaintiff's Response, Page 16). Soto sites no case authority for that proposition, and I find it questionable. His placement on a best qualified list may well establish the second element of his prima facie case, i.e., that he applied for and was qualified for the position, but it does not automatically compel the conclusion that his qualifications were equal to or superior to those of the ultimate selectee. Rather, an independent review of the <u>relative</u> qualifications of the Plaintiff and the person selected, based on the evidence presented, is necessary to determine whether Plaintiff has satisfied the fourth prong of her prima facie burden. <u>White</u>, <u>supra</u>.

In my view, the evidence establishes that Wilhelmson's general aviation experience exceeded the Plaintiff's . Soto asserts in a sworn declaration that his Form SF-171 reflects that he had between 6 and 7 years of general aviation experience. (Exhibit A to Plaintiff's Response to Motion for Summary Judgment). In contrast, Wilhelmson's SF-171 that his 12 years tenure at the Sacramento FSDO had thrust him heavily into the general aviation discipline, and that he had "performed just about every (GA) task expected from our FSDO." In addition, Wilhelmson served for 11 months as Chief Aviation Mechanic/Inspector for the McClellan Air Force Base Aero Club, performing inspections and all required maintenance on a fleet of 10 general aviation airplanes. Wilhelmson's supervisor at the Sacramento FSDO for the five years preceding the job opening was Dan R. McGehee, who made the ultimate promotion decision. McGehee's selection justification declared that the Sacramento FSDO is primarily a general aviation district, and that "90% of the work is general aviation work." He was clearly in a superior position to assess the character of Wilhelmson's experience. Based upon the foregoing evidence, I am satisfied that Soto failed to establish the fourth prong of his prima facie case.

Assuming, for purposes of analysis, that Soto had been able to establish a prima facie case, he would have shifted the burden to Defendant to produce legitimate, non-discriminatory reasons for failing to select him for the Sacramento position described in Count 1. <u>Southerland v. Michigan Department of Treasury</u>, 344 F.3d 603, 614-15 (6th Cir. 2003). Defendant offered several reasons.

Mr. McGehee did not interview any of the candidates. His selection was based upon the written applications, his personal knowledge of the Sacramento FSDO and his experience with applicant Wilhelmson. McGehee eliminated Plaintiff and other candidates

because of what he viewed to be their lack of general aviation experience. (Defendant's Exhibits 1 and 2). McGehee's reasons for selecting Wilhelmson included: (a) his past level of responsibilities (responsible for up to 300 people, at times, during Air Force tour); (b) his performance as an "acting" incumbent in the advertised position, which McGehee evaluated as "exceptional"; (c) his long-term experience at the Sacramento FSDO; (d) his performance in both general aviation and air carrier specialities during that period; (e) his demonstrated work ethic, described as "beyond reproach"; (f) his knowledge of Sacramento office procedures and policies; and (g) his ability to "work in the partnership culture." (Defendant's Exhibit 1). McGehee emphasized that both he and the assistant manager at the Sacramento FSDO were scheduled to depart the station, leaving the office with no "current manager in place." He considered it important to the office to have a degree of continuity during the transition period. Id.

In response to Defendant's proffer of legitimate, non-discriminatory reasons for failing to select him, Soto offers two points in rebuttal: (1) that McGehee offered "false information" regarding the process followed; and (2) that a comparison of the general aviation and supervisory experience listed in Soto's and Wilhelmson's SF-171 forms, revealed that Plaintiff had "significantly more general aviation and supervisory experience" than Wilhelmson.

Plaintiff correctly observes that McGehee's selection justification reflects that a panel was assembled at the Sacramento FSDO to review application packages and make a recommendation. The record, however, does not otherwise reflect that a panel was utilized. Defendant does not contest the existence of the inaccuracy. Accepting that McGehee's declaration contains the misstatement, I fail to understand how its existence

could serve to demonstrate that the balance of McGehee's assertions of fact regarding his evaluation and selection of Wilhelmson (and not Soto) were pretextual.

> A plaintiff can refute the legitimate, non-discriminatory reason articulated by an employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Dews v. AB Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). Regardless of which option is used, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against him." Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001).

Johnson v. Kroger Company, 319 F.3d 858, 866 (6th Cir. 2003). Merely pointing out an inaccuracy in McGehee's declaration does none of the above. While the assertion regarding a selection panel had no basis in fact, it was not proffered as a reason for Soto's non-selection. The mere existence of the inaccuracy noted has no tendency, in my view, to demonstrate that McGehee's other factual assertions have no basis in fact, or that his asserted selection criteria did not actually motivate his decision, or that his asserted justifications were insufficient to warrant his selection of Wilhelmson.

Plaintiff's second effort to rebut Defendant's proffered non-discriminatory justifications is Soto's own statement that his general aviation and supervisory experience was greater than Wilhelmson's. As a basis for that assertion, Soto relies upon his own review of his and Wilhelmson's SF-171 forms. Defendant accurately observes that a Plaintiff's subjective assertion of his own viewpoint concerning his qualifications is insufficient to establish pretext. Hendrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004). Plaintiff argues, however, that he did not simply state that he was more

qualified, but demonstrated the differences in qualifications based upon his review of the application packages. He invited the court to refer to the actual applications to verify the accuracy of his rebuttal. Unfortunately for Plaintiff, the court has done so.

Plaintiff's Exhibit A-5 purports to demonstrate that Wilhelmson's SF-171 reflected only 10 months of general aviation experience. (In Block C). Soto credits Wilhelmson with no general aviation experience during his September 1990 to date-of-selection tenure at the Sacramento FSDO. Plaintiff's evaluation ignores Wilhelmson's declaration that his assignment had thrust him heavily into general aviation, and that he had performed "just about every GA task expected from our FSDO" (which McGehee described as a general aviation district with 90% of the work performed in general aviation). (Defendant's Exhibit 3, Page 2). McGehee was Wilhelmson's direct supervisor for at least five years of his tenure at Sacramento, and was plainly in a position to judge the accuracy of Wilhelmson's declaration. Based upon my review of the record then, Soto's purported comparison is both subjective and inaccurate.

I conclude that Plaintiff has failed to rebut Defendant's proffered legitimate, non-discriminatory reasons for his non-selection. I find that Defendant has met the burden of showing the absence of a genuine issue of material fact as to Soto's Count 1 claims of race, ethnic origin and age discrimination. On those claims, Plaintiff has failed to demonstrate specific facts showing that there is a genuine issue for trial, and Defendant is entitled to summary judgment.

Defendant maintains that Plaintiff has similarly failed to establish a prima facie case of retaliation against him for his protected EEO activities. To establish a prima facie of retaliation, Plaintiff must prove that (1) he participated in an activity protected by Title VII;

14

(2) his employer knew of his participation; (3) an adverse employment action occurred against Plaintiff; and (4) there was a causal link between the protected activity and the adverse action.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir.). Defendant maintains, as to Count 1, that Plaintiff cannot prove that the selecting official had knowledge of his (Soto's) EEO activity.  Defendant further maintains that Plaintiff has produced no evidence demonstrating a causal connection between his EEO activities and his non-selection for the Sacramento position.  "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). The evidence is undisputed that the decision to select Wilhelmson, and not Soto, for the Sacramento FSDO position was made by Dan R. McGehee.  (Defendant's Exhibits 1, 2). In a sworn statement, McGehee asserted that Soto was eliminated from consideration for the vacancy because McGehee concluded that he had insufficient general aviation experience.  McGehee also asserts that he had no knowledge that Soto had filed EEO complaints.  McGehee's selection justification set out the basis for his decision.  There is simply no evidence that McGehee was influenced by EEO activity on the part of Soto or any other applicant.

Plaintiff argues that the Harrington testimony that he overheard Todd Pearson make a statement, on June 6, 2003, that " . . . we people in HRM in fact have our little group that we call each other so that we have one bad apple in one area it doesn't transfer to another area" creates a genuine issue of material fact regarding whether Soto was retaliated against for engaging in protected activity.  Defendant objects to the Harrington testimony

15

on hearsay grounds.  It is well established that hearsay evidence may not be considered on a motion for summary judgment.  <u>Jacklyn v. Schering Plough Healthcare Prod.</u>, 176 F.3d 921, 927 (6th Cir. 1999).[1]

Plaintiff maintains that Fed.R.Evid. 801(d)(2)(D) excludes the declaration from the definition of hearsay.  Under the Rule, a statement offered against a party, and which is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . ." is not hearsay. The record reflects that Pearson was an FAA employee at the time the statement was made.  The question of admissibility turns upon whether or not Pearson's remark was a statement "concerning a matter within the scope of the agency or employment."  The proponent of the evidence has the burden of establishing that a statement relates to a matter within the scope of agency or employment.  <u>United States v. Chang</u>, 207 F.3d 1169 (9th Cir.), cert denied, 531 U.S. 860 (2000).  Unfortunately, neither Plaintiff nor Defendant provides informative case law or analysis.

Under the current version of the Rule, "all that is required is that the statement concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement."  M. Graham, <u>Federal Practice and Procedure: Evidence</u>, Section 7023 (Interim Edition).  In the footnote, the commentator observes that ". . . at least in employment discrimination cases where 'scope of agency or employment' is questioned, a requirement of 'personal involvement' in the

---

[1] Defendant did not assert the hearsay objection in his Reply Brief, but did so in a post hearing supplemental brief.  In <u>Wiley v. United States</u>, 20 F.2d 222, 226 (6th Cir. 1994), the court ruled that a hearsay objection not raised "before the district court's ruling" was untimely.  By that standard, the objection here is timely.

firing decision is frequently imposed." (Id. n.7). Such a requirement would be troublesome in the instant case, since the inference sought to be supported by the out of court declaration (i.e. that Pearson may have communicated with the decision maker about Plaintiff's EEO activities) would need to be proven in order to render the statement admissible. The statement of McGehee that he was unaware of Plaintiff's EEO complaints directly contradicts the proposition that he was informed of them by anyone. Plaintiff has no evidence that McGehee was informed of his prior civil rights complaints. That is precisely why Pearson's alleged declaration is so important to him.

Our circuit has broadened the concept of "concerning a matter within the scope of . . . employment" beyond direct decision makers. In Jacklyn v. Shearing- Plough Healthcare Products, 176 F.3d 921 (6th Cir. 1999), the court examined whether the declarant was "involved in any of the critical appraisals of the plaintiff . . . - not whether the declarant was a direct decision maker" - in determining if the declarant's remark qualified as non-hearsay under Rule 801(d)(2)(D). In Johnson v. Kroger Co., 319 F.3d 858 (6th Cir. 2003), the court reasoned that "the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." In that case, however, the out of court statement was specific and directly related to the Plaintiff. In the case at bar, there is no evidence that Pearson (or anyone else) was "involved" in McGehee's evaluation of Plaintiff's transfer request. Certainly there is no evidence that Pearson had an official role in filling the Sacramento position. Pearson's alleged statement is non-specific as to time, person and circumstances. Harrington testified that Pearson was "talking about other cases or other things that go bad," and that he "was talking about the Southern Region." (Plaintiff's Exhibit A-1, Pages 456, 457). None of Soto's claims involve that region. Plaintiff

offers no evidence as to what Pearson's role with the agency was when the 2003 remark was made. Thus, I conclude that Pearson's out-of-court declaration has not been shown to be related to a matter within the scope of Pearson's employment for purposes of Fed.R.Evid 801.

Even if the out-of-court declaration was not hearsay, I conclude that it could not support a reasonable finding that Pearson communicated with McGehee about Soto almost two years earlier. The declaration clearly makes no reference to Plaintiff, or to any particular person, place or time specific to any of his claims in this case. The expression "rotten apple" is not defined. Isolated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [ ] discrimination.'" Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025 (6th Cir.) (quoting Gagne v. Northwestern Natn'l Ins. Co., 881 F.2d 309, 314 (6th Cir. 1989)), cert. denied, 510 U.S. 861 (1993). Even though the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant, "the courts must carefully evaluate factors affecting the statement's probative value, such as 'the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the tempral connection between the statement and the challenged employment action." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998) (quoting Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3rd Cir. 1997), cert. denied, 522 U.S. 1116, (1998)). The purpose and context of Pearson's out-of-court statement is unclear, and the temporal connection between it and Soto's non-selection is remote. At best, the admission of Pearson's statement could support the inference that FAA Human Resources officers could have communicated with McGehee. The mere existence of a scintilla of evidence in support of the non-moving party's position will not

suffice. There must be evidence on which a jury could reasonably find for the non-moving party. Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 432 (6th Cir. 2003).

## Counts 2 and 3

Counts 2 and 3 of the Complaint are factually interrelated. Each relates to a position in FAA's Western-Pacific Region. In each instance, the position was filled pursuant to a decision by Thomas E. Stuckey. Between October 2001 and January 2002, Stuckey served a 120 day detail as the Acting Manager, Flight Standards Division, Western Pacific Region, while simultaneously serving as Southwest Region Manager of Flight Standards Division.

In late 2001, the position of Manager, Fresno FSDO became vacant. Gregory L. Michael was transferred to that position from a higher grade billet in Washington D.C.[2] A short time after Michael's transferred to Fresno, the position of Manager, Sacramento FSDO, became open as a result of the retirement of Dan McGehee (the decision maker in Count 1). Upon hearing of the Sacramento opening, Michael contacted Stuckey and asked to be transferred to the Sacramento FSDO Manager's position. (Complaint; Plaintiff's Exhibit A; Defendant's Exhibit 4). Mr. Michael was eligible for a lateral reassignment because, at the time of his request, he held the same job title, responsibilities and grade level as the vacant Sacramento position. Stuckey elected to fill the vacancy non-competitively, in lieu of posting a vacancy announcement. Although he did not have a personal relationship with Michael outside of the FAA, Stuckey did know him and was

---

[2] Michael was selected despite Plaintiff's pending IPP hardship request for the Western-Pacific Region. Soto filed a discrimination charge stemming from his non-selection. That charge was part of an earlier lawsuit in this court, Case No. 01-71244.

familiar with his work and abilities for some years prior to the opening of the Sacramento position. Stuckey averred that he selected Michael as Manager of the Sacramento FSDO "because he [Michael] had been a manager at several different levels in several locations in the agency. He had been a FSDO Manager, a regional division manager, and a headquarters level division manager. He did an excellent job in every position he filled." (Defendant's Exhibit 4).

Stuckey did not consider Soto or anyone else for the position. Because Michael had expressed interest in the Sacramento job, and was well qualified for it, Stuckey decided to laterally reassign him. Stuckey's Affidavit states that non-competitive, lateral reassignments can be made under the FAA personnel system, and that the reassignment of managers from one office to another is a routine process. (Defendant's Exhibit 4). Stuckey acknowledged that Soto had filed a hardship request for the Western-Pacific Region, as well as for other locations around the FAA. He asserted, however, that a hardship request did not entitle Plaintiff to a promotion to a key position. (Id.)

Plaintiff alleges in Count 3 of his Complaint that Stuckey's selection of Michael for the Sacramento Office Manager's position represented an act of discrimination against Soto because of his race and ethnic origin, and was also an act of retaliation against him for his prior involvement in the discrimination complaints process.

Defendant argues that Plaintiff has failed to prove that he and Michael were similarly situated in "all relevant aspects," as is essential to the statement of a prima facie case. I agree. Soto has offered no direct evidence of discrimination based upon race, ethnic origin or protected activity. Accordingly, he is subject to the burden imposed onto the McDonnell Douglas analysis. Unlike Plaintiff, Michael was an experienced FSDO Manager at the time

of his lateral reassignment to Sacramento.  In addition, he had previously worked for FAA as a division manager in the Central Region, and as an SES Executive at the agency headquarters in Washington, D.C.  (Defendant's Exhibits 4, 6 and 36 (Pages 123-124).[3]  Soto concedes that he had not been an FSDO Manager or an SES Executive.  (Exhibit 36, Page 130).  As the evidence clearly establishes that Michael had far greater management experience, he and Plaintiff are not similarly situated in all aspects of employment relevant to the Sacramento position.

Even if this court were to find that Soto has established a prima facie case, Stuckey's declaration sets out specific reasons underlying his selection of Michael for the Sacramento Manager's job.  He had known Michael for approximately 10 years.  Stuckey was the selecting official who chose Michael for the position of Division Manager in the Central Region.  In that position, Michael reported to Stuckey as Division Manager.  During the same time period, Stuckey chose Michael to be lead technical manager on a commercial aviation safety team, an important project with high visibility within and outside the agency.  Stuckey averred that he selected Michael based on his excellent qualifications and experience, as well as his track record of excellent work in multiple management positions within the agency.  (Defendant's Exhibit 4).  Soto admits that he did not have a working relationship with the Mexican Civil Aviation Directorate, and that he had not participated in the FAA's NAFTA working group.

Plaintiff has offered no evidence that Stuckey's declared justifications for his appointment of Michael were a pretext for discrimination.  There is no evidence that a non-

---

[3]  Michael left his posting in Washington D.C. to accept a downgrade as FSDO Manager in Fresno, following the disclosure of a consensual affair with a female executive.  (Exhibit 36, Pages 125, 128-130).

competitive lateral transfer of a manager violates FAA employment practice or procedure. Nor is there any evidence that would suggest that Soto's race, national origin or EEO activities was the true justification, or even an ancillary justification for Stuckey's hiring decision. Having reviewed the record, I find no evidence establishing that Plaintiff and Michael were similarly situated. Plaintiff has failed to establish the fourth element of a prima facie case of disparate treatment. Even if such were not the case, Soto has failed to offer evidence sufficient to rebut the legitimate, non-discriminatory reasons advanced by Defendant for Stuckey's hiring decision.

I further find an absence of evidence in the record sufficient to establish a prima facie case of retaliation for Plaintiff's EEO activities. There is no evidence that Stuckey was aware of Mr. Soto's prior (or contemporaneous) discrimination complaints. Nor is there evidence in the record sufficient to demonstrate that Stuckey's hiring of Michael was causally connected to Soto's protected activity.

For all of the above reasons, I recommend that Defendant's Motion for Summary Judgment be granted as to Count 3 of the Complaint.

All of the foregoing discussion applies with equal force to Soto's Count 2 claims relating to the selection of Cheryl A. Hammans, a white female, to fill the vacancy at Fresno which resulted from Michael's transfer to Sacramento. Unlike Plaintiff, Hammans has worked successfully in the past as the Manager of the Baton Rouge FSDO. Stuckey's Affidavit establishes that Hammans had expressed her interest in the Fresno vacancy on at least two occasions. Hammans had worked in the past at the Branch Manager level in the Western-Pacific Region Flight Standards Division. Stuckey averred that he didn't believe he was even aware that the Fresno vacancy had been "bid" before he selected

Hammans, or that Soto had "bid" for the vacancy. He was aware of Soto's hardship IPP Request but believed that Hammans had submitted an IPP Request as well. Because Hammans had significant experience in the FSDO Manager position, she was not similarly situated to Soto in all relevant respects. I am satisfied that Plaintiff has failed to establish the fourth prong of his prima facie case.

Once again, as with Michael, Stuckey has offered legitimate, non-discriminatory reasons for his selection of Ms. Hammans. His Affidavit states that Hammans was a "known quantity" to him as the successful Manager of the Baton Rouge FSDO. He selected Hammans for the Fresno position in the Western-Pacific Region, even though he [Stuckey] knew that he would return to the Southwest Region and would not directly benefit by her reassignment. Stuckey viewed Hammans as a "known performer" who he considered well qualified for the Fresno vacancy. He knew that she, like Soto, had expressed interest in returning to the Western-Pacific Region. Plaintiff has offered no evidence to rebut Stuckey's declared justification for Hammans' selection. Thus, I conclude that there is an absence of evidence in the record to support an essential element of Plaintiff's disparate treatment claim in Count 2 of the Complaint.

The analysis of Soto's Count 2 retaliation claim is also identical to that in Count 3. There is no evidence that Stuckey was aware of Soto's EEO activities at the time he selected Hammans. Nor is there evidence to support the inference that Plaintiff's non-selection was causally connected to his protected activity. Plaintiff has offered no evidence which would support the inference that Stuckey's proffered legitimate, non-discriminatory reasons for Hammans' selection were a pretext to mask a retaliatory intent. The mere fact that an adverse employment decision occurs after protected EEO activity is not, standing

alone, sufficient to support a finding of a causal connection.  Booker v. Brown and Williamson Tobacco Co., Inc., 879 F.2d 1304, 1314 (6th Cir. 1989).  Nor is a causal connection demonstrated if the proximity of the events is greater than immediate.  In the case at bar, Soto has failed to offer any evidence whatsoever of temporal proximity.  Nor has he offered any evidence of retaliatory motive.  Finally, even if Plaintiff could establish a prima facie case, he has failed to prove that Defendant's legitimate non-discriminatory reasons are a pretext for retaliation.

### Count 4

Count 4 of Soto's Complaint relates to his application for a Supervisory Aviation Safety Inspector position at the Fort Worth FSDO in FAA's Southwest Region.  The position was the subject of three vacancy announcements: ASW-FS-01-365-58295 for the period July 25, 2001 to August 8, 2002; ASW-FS-01-409-58816 for the period August 10, 2001 to August 13, 2001; and ASW-FS-01-458-59548, open from September 18, 2001 to October 2, 2001.  The second announcement indicated that those who had applied under the first needed to reapply.  The third announcement provided that those who had applied under the second need not apply, but would automatically receive consideration.

The Complaint alleges that Plaintiff applied for the position and was considered by Defendant to be a qualified candidate.  Nonetheless, on December 12, 2001, Defendant selected Frederick E. Dryden, a caucasian male, for the position.  Soto alleges that Defendant was aware of his prior involvement in the discrimination complaints process, and that his non-selection was the result of unlawful discrimination against him based upon his race and ethnic origin, and retaliation for his prior EEO activity.

Plaintiff alleges that he reapplied under the second vacancy announcement, but that Dryden did not. He claims that, even though Dryden only applied under the first announcement, he was selected for the vacancy. The evidentiary support for Soto's accusation is unstated in his Affidavit. It is clear from the Affidavit's submitted by Defendant that Dryden was interviewed by an agency review panel and was the unanimous first choice for selection to the position. Soto correctly observes that Ronald C. McGarry, Acting Manager of the Southwest Region, Flight Standards Division during the relevant time period, was the selecting official. McGarry asked the interview panel to provide him their recommendations for the best three candidates. Soto alleges that he was ranked number 3, but that only the candidates ranking first, second and fourth were referred to McGarry. Plaintiff also notes that the vacancy announcement indicated a preference for applicant's with fluency in Spanish and familiarity with the Mexican culture. Plaintiff claims that Dryden's application documents do not reflect those qualifications, while Plaintiff's documentation demonstrated that he met them.

In support of his Motion for Summary Judgment, Defendant has submitted the Affidavits of Ronald McGarry, Wayne Williams, Javier Rodriguez and David Bonnick. Williams chaired the interview panel for the Fort Worth position, and Rodriguez and Bonnick were members.

McGarry's Affidavit confirms that he asked the panel for their recommendations as to the best three candidates, and that such recommendation was one factor used by him in making his final decision. McGarry avers that Soto was not one of the three candidates recommended by the panel. McGarry further asserts that his selection decision was not influenced by Plaintiff's race or prior EEO complaints, which were not known to McGarry at the time of his decision. (Defendant's Exhibit 11).

Williams' Affidavit confirms that Soto was not among the candidates recommended to McGarry. His Affidavit declared that the committee developed 11 job related questions which were asked of all interviewees. The questions were intended to elicit information from the applicants regarding their experience with the FAA, International Civil Aviation Organization (ICAO) Standards, experience with entities outside the FAA, team building skills and (because the Fort Worth position involved work with Mexican air carriers operating within the United States and Mexican companies holding U.S. repair station certificates) the applicant's knowledge of Mexican culture and language. Each interviewer maintained a worksheet for scoring responses. Each question was graded on a score of 1 (ineffective) to 5 (highly effective) with a total of 55 possible points for each interviewee. Following the session, the members discussed their individual scores to ensure that no interviewer had missed or overlooked something in an applicant's response. Following that process, the scores were consolidated, averaged and recorded. Dryden was the top scoring interviewee (52 points). The next four were clustered in a range of 41 to 45 points. Soto's score was 43. Each interviewer was asked to pick three candidates to recommend for the position. Consideration was given to the interview process, but the members were allowed to consider other factors included in the applicant's application. Williams avers that the panel reached a consensus recommendation as to three individuals, based not only on interview scores, but also the applicant's presentations, knowledge, experience, team building, vision, judgment and overall impression. Finally, Williams declared that he was not aware of Plaintiff's prior EEO complaints. (Defendant's Exhibit 7).

Javier Rodriguez, a caucasian male of Cuban origin, was a member of the committee. He stated in an Affidavit that he felt there were only two strong candidates for the Fort Worth position, Dryden and James Dole. Rodriguez recalled that both were very

26

aware of Mexican culture and history, and that Dryden "knew nearly everyone within the Mexican civil aviation authority" and had a great deal of experience working with international issues between the U.S. and Mexico. Dryden had experience working with the North American Free Trade Agreement ("NAFTA") and had visited Mexico many times. Dryden and Dole knew all that was asked with reference to the ICAO documents, and both were familiar with international laws. They had extensive experience with maintenance and operation issues. Rodriguez averred that both Dryden and Dole spoke Spanish, and that Dryden had previous experience as a Unit Supervisor and Office Manager. In contrast, he recalled that Soto had no knowledge of international law or the ICAO annexes or their application. He further recalled that Mr. Soto did not speak Spanish very well. Rodriguez stated that he was not aware of Mr. Soto's prior EEO activity before the candidates were ranked for selection for the Fort Worth position. (Defendant's Exhibit 8).

David Bonnick, a black male of Hispanic origin, was also a member of the committee. While his recollections are not as extensive as those of his fellow committee members, Bonnick confirmed that Dryden was the top candidate. He stated that Dryden's answers to the committee's job related questions were very complete and made Bonnick "comfortable that he was the most knowledgeable person and the best qualified to assume the duties of the position." Bonnick recalled no indication that the selection review process was unfair or biased against Hispanic applicants. Finally, he noted that he had met Plaintiff once several years earlier, but that he was not aware of Soto's prior EEO activity. (Defendant's Exhibit 9).

Ronald C. McGarry's Affidavit outlines the criteria upon which he based his selection of Dryden. He stated that Dryden possessed several years of international work experience, including work directly with the Mexican aviation industry and the Mexican Civil

Aviation Authority. He stated that Dryden was a recognized international aviation expert who had routinely been called upon to conduct international assessments of foreign aviation governments. He had successfully served for five years as a team leader for the NAFTA Agreement Work Group formed to implement the specialty air services provisions of the agreement. McGarry averred that Dryden has a "broad background of progressive experience in the field of aviation, spanning approximately 35 years as a commercial pilot and as a highly experienced aviation mechanic." He noted that, while working in flight standards, Dryden served as a supervisor in the early 1990's and as a regional program specialist for 10 years prior to his application for the Fort Worth position. He stated that the selectee had repeatedly received recognition for high performance. McGarry knew first hand of Dryden's performance. Dryden had demonstrated superior performance as acting manager of the Dallas-Fort Worth IFO. McGarry also spoke with Otis Key, Dryden's previous supervisor, who confirmed that he was "technically and managerially ready to manage a field office." The affiant stated that Dryden's international experience was important for the Fort Worth position. (Defendant's Exhibit 11).

In contrast McGarry's contact with a previous supervisor of Mr. Soto did not, in McGarry's view, indicate that Plaintiff was performing supervisory/managerial duties at a level that demonstrated a readiness for managing a field office. He further concluded that, while Soto had extensive mid-level supervisory experience, his qualifications were not as great as the selectee. McGarry noted that the interview process was conducted by a diverse group of individuals that included two men of Hispanic origin. Finally, McGarry stated that he was not aware of Plaintiff's race or prior EEO complaints at the time of Dryden's selection. (Defendant's Exhibit 11). Having reviewed the evidence in the record, I am satisfied that Plaintiff has failed to establish the fourth prong of a prima facie case of

28

disparate treatment, in that he has failed to demonstrate that he and Dryden were similarly situated in all respects relevant to the position sought. Dryden was the consensus selection of all four employees formerly involved in the selection process. While Plaintiff may be correct in stating that Dryden's application did not reflect a fluency in Spanish, committee member Rodriguez stated that Dryden did speak the language, and both the committee and McGarry emphasized Dryden's extensive knowledge of Mexican culture and international law, as well as his substantial experience in dealing with Mexican government officials and aviation organizations. Based upon the evidence highlighted by Defendant in support of his motion, Dryden's qualifications for the Fort Worth position eclipsed Soto's in every relevant respect.

Even if the court were to find that Soto had presented a prima facie case of race/national origin discrimination, I am satisfied that the justifications asserted by McGarry, and supported by the interview committee, have not been rebutted by the Plaintiff.

As with the previous counts of the Complaint, I also find that Plaintiff has failed to establish a prima facie case of retaliation. McGarry has stated under oath that he was unaware of Plaintiff's EEO complaints at the time of his selection of Dryden for the Fort Worth position. Similar averments have been received from every member of the interview committee whose recommendation of Dryden for the position was unanimous. Plaintiff has simply failed to produce any evidence that Dryden's selection was causally related to Soto's prior discrimination complaints. Once again, McGarry's legitimate, non-discriminatory justifications for Dryden's selection are totally unrebutted.

For all of the above reasons, I recommend that Defendant's Motion for Summary Judgment be granted as to Count 4 of the Complaint.

**Count 5**

Count 5 of Plaintiff's Complaint relates to the position of Supervisory Aviation Safety Inspector at the Houston FSDO in the Southwest Region. The position was advertised in January 2002. Plaintiff applied and was listed as qualified. On May 1, 2002, Beaufort C. Eatmon, an African American male, was selected for the position. Plaintiff alleges that he was more qualified for the position. He alleges that Defendant was aware of his prior involvement in discrimination complaints, and that Eatmon's selection was an act of discrimination against Plaintiff based upon his race and ethnic origin, as well as an act of retaliation for his prior involvement in the discrimination complaints process.

As with the previous counts of the Complaint, Defendant maintains that Plaintiff has failed to produce evidence demonstrating that, at the time his application was rejected, he had similar qualifications to the employee who was selected for the Houston position. Specifically, Defendant maintains that Plaintiff "received one of the lowest rankings scores among the candidates who applied for the position." (Defendant's Motion, Page 14). The FAA official who made the final selection, Michael Zenkovich, did not interview Plaintiff or consider his application because Soto's name was near the bottom of a list compiled by an interview committee. Defendant further maintains that, even if Plaintiff could establish a prima facie case, he has produced no evidence to support the inference that Defendant's legitimate, non-discriminatory reasons for his non-selection were a mere pretext. Finally, Defendant maintains that Plaintiff has failed to establish a prima facie case of retaliation, because he cannot prove that the interview panel members or the selecting official had knowledge of his EEO activity, or any evidence demonstrating a causal connection between that protected activity and the Defendant's selection of Eatmon for the Houston position.

Plaintiff counters that both he and Eatmon were on the referral list for the Houston vacancy. He maintains that the announcement reflected that Defendant was seeking applicants with highly complex mega 121 air carrier experience. He argues that Eatmon's SF-171 showed no large aircraft training or experience. While Eatmon's application showed a combination of general aviation and air carrier work between November 1998 and January 2002, it did not include any information about the make, model or series of aircraft with which he had experience. In contrast, Soto observes that his own application reflected more than twenty years experience with large aircraft and included the make, model and series of equipment with which he had experience. Soto also contrasts Eatmon's application by the fact that it reflected no large aircraft training, while Soto's documents reflected seven large aircraft training courses. Plaintiff emphasizes that Eatmon had only been a supervisor since November 1998, while Soto had been a supervisor since April 1996. In addition, Plaintiff claims that at least one member of the rating panel admitted knowledge that Soto had filed EEO complaints. The only support for that assertion, however, is Soto's own Affidavit. (Plaintiff's Exhibit A). Finally, Soto notes that Mr. Buit had denied his travel request to attend the interview for the Houston position, and thus Plaintiff had to participate in the interview process by telephone. (Plaintiff's Brief, Pages 18-19; Exhibit A).

In support of his Motion for Summary Judgment, Defendant has submitted the Affidavit of the selecting official and all three members of the interview committee for the Houston position. Michael J. Zenkovich made the final selection of Beaufort Eatmon for the job. At the time, Zenkovich was serving on a detail as Acting Manager in the Certificate Management Office, Continental Express Air Worthiness Unit, Houston, Texas.

Zenkovich's affidavit reflects that approximately ten candidates were ranked by an interview panel. He reviewed the applications of only the top two or three candidates, and subsequently interviewed them and performed a reference check with their supervisors. Zenkovich averred that he was seeking a person "with both management and people skills and technical experience in air worthiness covering maintenance and avionics." He stated that Eatmon met those requirements, and that he had demonstrated superior abilities to deal with personnel and test issues. According to Zenkovich, Eatmon "had a strong technical background and had shown that he was multi skilled technically." In addition to supervisory experience over maintenance and avionics, Eatmon had also successfully supervised operational inspectors.

Zenkovich noted that Mr. Soto was near the bottom on the list of candidates, and neither Plaintiff nor any of the individuals ranked between him and the top two or three candidates was interviewed. The Affiant stated that no one influenced him not to interview or select Soto, and Plaintiff's name "did not come up at all." The six supervisors under Zenkovich's authority in Houston included one female, one Native American and one Hispanic American. Eatmon, an African American, replaced the female supervisor who subsequently moved to another region. Finally, Zenkovich declared that he was not aware that Mr. Soto was Hispanic, and he did not know that Plaintiff had filed prior EEO complaints. (Defendant's Exhibit 18).

Bernard X. Mullins was a member of the interview panel for the Houston position. He stated in an Affidavit that all interviewees were asked the same questions. He stated that the committee's ranking was solely based on the results of the interviews, and the committee did not do reference checks. Mullins was unable to recall anything specific

about Mr. Soto's interview. He knew that Plaintiff was Hispanic, but did not know that he had engaged in prior EEO activity. Mullins averred that Soto's race, national origin and protected activities were not factors in his rating of Plaintiff's interview.

Debi Churchwell was also a member of the interview committee. She confirmed Mullins' statement that all interviewees were asked the same questions. After each interview, the three members of the committee scored the answers and totaled the scores. At the end of the interviews, the committee members compared scores and resolved any major differences. The total scores were then ranked in order. At the time of her Affidavit, Churchwell did not remember many details of the interviews, but she did recall that the ultimate selectee, Beaufort Eatmon, "gave a very good interview; he had a lot of related experience; and he had good specific answers to all of our questions." Churchwell recalled that Soto's interview was conducted by telephone. She did not recall anything negative about the interview, "just that he gave a good average interview." The telephone interview was scheduled because Soto's office would not authorize his travel to Dallas for the interview. Churchwell did not know that Mr. Soto was Hispanic, nor did she know that he had participated in prior EEO activity. She stated that Plaintiff's race, national origin and protected activities were not factors in her rating of his interview for the Houston position. (Defendant's Exhibit 14).

The final member of the interview committee was Raymond Fox. He recalled that the committee interviewed each candidate against a standard list of questions. Scores were assigned to each interviewee's answers. As a panel member not associated with the hiring office, Fox was "not looking for particular knowledges (sic), skills or experiences." He recalled that Myron Busboom and Beaufort Eatmon both interviewed very well, but he

was unable to remember specifics as to Plaintiff's qualifications or weaknesses. Fox did not specifically recall Plaintiff. He stated that the committee's rankings were consistent to the extent that each was based on the candidates' response to the questions and that candidates were placed in rank order according to the total scores in comparison to those of other interviewees. Fox did not know that Soto was Hispanic, nor did he know of his prior complaint activity. (Defendant's Exhibit 15).

Defendant's Exhibit 16 is a copy of the interview panel's scoring summary. Ten candidates were interviewed. The scores ranged from a high of 121 points to a low of 82 points. Beaufort Eatmon, the ultimate selectee for the Houston position attained the second ranked score at 118 points. Plaintiff's score of 89 placed him in a tie for the 8th ranked score. The highest interview score was attained by Myron Busboom, who attained a score of 121 points. (Defendant's Exhibit 16).

Plaintiff admits that he had never met Mr. Zenkovich or any of the panel members prior to his interview, and that none of those individuals were involved in any of his previous EEO complaints. (Exhibit 19, Paragraphs 7, 8, 12-16). There is no evidence in the record of any personal animus on the part of Zenkovich or the committee against Plaintiff based upon his race or national origin. Furthermore, there is no support in the record for Plaintiff's contention that at least one of the committee members was aware of his previous EEO activity. The Affidavits establish that the contrary is true. Plaintiff offers no support for his assertion that he and Eatmon were similarly qualified in all relevant respects. A Plaintiff's subjective belief that he was better qualified for a position than other FAA employees is not probative of discrimination or retaliation. See Hendrick v. Western Reserve Care System, 355 F.2d 444, 462 (6th Cir. 2004). On that basis, I am satisfied that Plaintiff has, once again, failed to establish the fourth prong of a prima facie case.

Even if Plaintiff had established a prima facie case, he has offered no evidence to support an inference that Zenkovich's stated non-discriminatory reasons for his selection of Eatmon were pretextual. Zenkovich declared that Eatmon had a strong technical background, with supervisory experience over maintenance and avionics. Those qualities are reflected in Eatmon's SF 171. He held an associates degree in electronics technology and listed numerous computer, communications and avionics training courses in his application. He had many year's experience as an Airworthiness Avionics Aviation Safety Inspector. (Defendant's Exhibit 17). Soto's college work emphasized business and sociology courses, and his aviation training and experience were primarily in airframe and powerplant areas. Plaintiff has offered no evidence that the proffered reasons for Zenkovich's hiring decision were mere pretext to mask a hostile and unlawful discrimination against Hispanic applicants.

Nor has Plaintiff established a prima facie case of retaliation in Count 5. The unrebutted testimony is that no selecting or rating official associated with the Houston FSDO appointment knew that Plaintiff had engaged in EEO activities. There is simply no evidence that the relevant agent's of the Defendant knew of such participation, or that there was any causal link between Plaintiff's protected activity and his non-selection for the Houston job.

Based upon the foregoing considerations, I recommend that Defendant's Motion for Summary Judgment be granted as to Count 5 of the Complaint.

### Count 8

In Count 8, Soto alleges race/national origin discrimination and retaliation with respect to FAA appointments to the positions of Aviation Safety Inspector in both Frankfort,

Germany, and London, United Kingdom. He alleges that he applied for and was identified as eligible for those positions. Defendant had several vacancies, but Plaintiff was not selected for service in either location.

The undisputed evidence reflects that fourteen (14) applicants for open positions in Frankfort, London and Brussels, Belgium were interviewed and rated by a single three member panel consisting of managers of the International Field Offices (IFO) in those locations. The committee members were Susan Ward (Frankfort), Mira Rosen (Brussels) and Fred Stein (London). The selecting official for each vacancy was the manager assigned to that location. Defendant has offered an Affidavit from each panel member.

Rosen's Affidavit states that each interviewee was asked identical questions, which were scored by the panel members from 0-5. At the conclusion of all interviews, the scores were totaled for each applicant. The panel members discussed the candidates' performance during the interview and the information contained in their bid packages. Rosen avers that each manager selected the candidate that would best fit the vacancy in his/her office, and that "[h]ighest scores were not always the deciding factor." An applicant's technical background and achievements were also weighed, because each IFO has a different work environment. (Defendant's Exhibit 20). Rosen declared that she was not aware of any direct or indirect evidence that would substantiate Plaintiff's allegation of discrimination based upon national origin, sex, age or prior EEO activity. (Defendant's Exhibit 20).

The Affidavit of panel member Susan Ward reflects that she was the selecting official for the Frankfort position. She selected four individuals, Dale Hansen, Richard Brown, Patricia Williams and Jackie Black, based upon their Part 145 experience and their

interview performance.  Of those, only Hansen accepted the Frankfort posting.  Hansen's interview score of 125 ranked 1st among the 14 interviewees.  Ward had no prior working relationship with any of her selectees or with Plaintiff.  She described the process employed by the panel as "[a]pplications, interviews, ratings, references, recommendation." (Defendant's Exhibit 21).

Panel member Fred Stein was the selecting official for the London position.  He averred that he chose Thomas D. MacDonald based on "Part 145 experience and knowledge."  MacDonald was awarded the 5th ranked interview score of 108.  Soto's total score of 117 was tied for the 2nd highest position, although Stein scored Plaintiff's interview performance at 47, the highest score assigned by any panel member to any applicant. (Defendant's Exhibit 23).  Stein had no prior working relationship with Plaintiff or any of the other applicants for the job.  Stein declared that he was not aware of any direct or indirect evidence that would substantiate Soto's allegation of discrimination based on his national origin, sex, age or prior EEO activity.  (Defendant's Exhibit 22).

The Affidavits submitted by the panel members indicate that the highest overall interview score was not determinative of an applicant's competitive position.  Each manager selected the candidate viewed as the "best fit" for the particular duty station. Technical background and experience were considered in making that determination. Ward selected a total of five applicants, based upon their Part 145 experience and the interview process.  Plaintiff was not among them.  Only one of the five, Hansen, accepted the position.[4]  Hansen's application reflects extensive Part 145 experience with three

---

[4]  Neither party has offered specific evidence as to Plaintiff's qualifications relative to Ward's four non-accepting candidates, other than the rating summary list.

civilian employers over a period of thirteen years prior to his employment by FAA in 1997. His experience with FAA as principal maintenance inspector (PMI) at the Van Nuys FSDO also involved Part 145 repair stations. Plaintiff has not offered evidence that his qualifications (in general or with specific reference to Part 145 experience) is comparable to Hansen's. Thus, I conclude that he has not met his burden of establishing the fourth prong of a prima facie case - that an employee of similar qualifications who was not a member of the protected class received the Frankfort position. Even if the court were to find that a prima facie case had been established, Soto has not offered evidence demonstrating that Ward's emphasis on Part 145 experience was a mere pretext for discrimination.

As with all of the Counts of the Complaint addressed thus far, Soto has failed to offer evidence establishing that the selecting officials were aware of his EEO activities at the time of his non-selection for the Frankfort posting. He has offered no evidence to suggest that his non-selection was in any way causally related to his prior civil rights complaints. Susan Ward denied in her Affidavit that she even knew what "a protected EEO activity is." (Defendant's Exhibit 21). There is no evidence to the contrary.

Fred Stein selected Tom MacDonald for the London position, despite the fact that he scored Plaintiff six points higher than MacDonald based on their interview performance. (Defendant's Exhibit 23). Stein's Affidavit states that MacDonald's Part 145 experience and knowledge were the basis for his selection. (Defendant's Exhibit 22). MacDonald's application reflects formal education including four college degrees. He holds an

_____

(Defendant's Exhibit 23). That list reflects that Ward scored three of the four non-accepting candidates higher than she scored Soto on the interview.

Associate's Degree in Aircraft Maintenance Technology and a Master of Aviation Management Degree from Embry Riddle Aeronautical University. MacDonald's resume includes 20 years of experience in the United States Air Force in the field of large/heavy aircraft maintenance. He has more than nine years of civilian employment experience in Part 145 repair stations. His FAA experience included nearly four years as an Aviation Safety Inspector (Maintenance), including three years as a Principal Maintenance Inspector. He served one year as a team member on a Part 145 Repair Station's Certificate Management team and two years as the Part 145 Certification Project Manager for the Windsor Locks FSDO. (Defendant's Exhibit 25).

In his response to Defendant's Motion for Summary Judgment, Soto makes no attempt to demonstrate that his own Part 145 experience is greater than, or even comparable to, MacDonald's.[5] Plaintiff advances two alternative arguments. First, he maintains that MacDonald did not actually apply for the London posting. Three FAA vacancy announcements pertinent to this Count were issued for the period July 10, 2002 to July 31, 2002. Announcement AEA-AFS-02-2040-64841 was for a position in Brussels. It stated that it could "also be used to fill unexpected vacancies which might occur at Frankfort and London." (Defendant's Exhibit A-13). Announcement AEA-AFS-02-2039-64839 announced a position in Frankfort, and stated that it "may also be used to fill unexpected vacancies which might occur at the London and Brussels IFOs." Announcement AEA-AFS-02-2011-64844 concerned a vacancy in London, and provided

---

[5] Plaintiff's application for the London posting contains a summary of his work experience to that point. That document reflects significantly less (approximately five and one-half years) Part 145 experience, all with FAA at the Detroit FSDO. (Defendant's Exhibit 45).

that it "may also be used to fill unexpected vacancies which might occur at Frankfort and Brussels IFOs." (Id.). MacDonald's application referenced only announcement AEA-AFS-02-2040-64841 (Brussels). (Defendant's Exhibit 25). Mira Rosen's Affidavit declared that "[a]ll bids state that one bid can be used to file for all three IFOs." Plaintiff contests that declaration on the ground that the London and Frankfort positions announced on the same day as the Brussels opening were not "unexpected," and thus MacDonald was awarded a position for which he had not applied. Defendant correctly notes Rosen's declaration that, while MacDonald only applied for the Brussels job, he "indicated at the actual interview that he would consider a position at ANY IFO." (Plaintiff's Exhibit 12, Page 2).

Neither party offers evidence to establish whether the position ultimately offered to MacDonald was "unexpected" within the meaning of the announcement notices, or clearly demonstrating whether a selection based upon MacDonald's expression at the interviews of interest in the London position was administratively correct. Nonetheless, the evidence is undisputed that MacDonald did appear for the interviews, expressed interest in the London position and was ultimately chosen by the selecting official. Whatever the technical merits of Plaintiff's argument might be in terms of FAA personnel policy, I find no basis upon which to conclude that consideration of MacDonald for the London opening could reasonably be construed as an act of discrimination or retaliation against Soto. It is undisputed that the selection process for all three openings were consolidated in a single interview session before a panel of managers drawn from each of the affected offices. MacDonald's selection had no greater effect on Soto than it did upon each of other applicants who were not selected. There is no evidence that all (or any) of the other non-selected applicants were Hispanic, or that any had engaged in EEO activities. Yet each suffered the same loss as Soto by reason of MacDonald's selection.

Soto offers an alternative argument. He correctly notes that the vacancy announcement for the London position included a "quality ranking factor," by which applicants with one year of Certificate Management experience on Part 145 repair stations would "be considered ahead of all other candidates who met the basic qualification requirements." Candidates with the described experience were requested to note it on their bid applications. (Plaintiff's Exhibit 12). Soto maintains that he had the quality ranking factor qualifications, but that MacDonald did not. Nonetheless, MacDonald was selected for the position. Plaintiff relies upon a "Qualifications Record" form relating to MacDonald. The form contains a "remarks" section in which the quality ranking factor of one year of certificate management experience on Part 145 Repair Stations is hand written. Next to the notation are two columns, one marked "yes" and the other marked "no." The FAA reviewer checked the "no" column. That marking, however, is not consistent with the information contained in MacDonald's bid application. In the "Summary of Qualifications" section of his application, MacDonald declared that his FAA experience included "one year as a team member on a Part 145 Repair Station Certificate Management Team and two years as the Part 145 Certification Project Manager for the Windsor Locks FSDO." (Defendant's Exhibit 25, Page 3, Paragraph 3). That information directly contradicts Plaintiff's one page exhibit.[6] In light of MacDonald's specific declarations, which Plaintiff has not explicitly challenged, it appears that MacDonald was entitled to the quality ranking

---

[6] Plaintiff's Affidavit admits that Hansen qualified for the quality ranking factor, but claims that other candidates without certificate management experience were selected ahead of him. Only Hansen and MacDonald received positions. Furthermore, Soto failed to support his claim as to anyone else with evidence beyond his own assertions.

factor, despite the entry upon which Plaintiff relies. The reviewer indicated (also by a check mark) that MacDonald was "qualified" for the position. I view Plaintiff's Exhibit to be a mere scintilla of evidence that MacDonald lacked the quality ranking factor. I do not consider it to be evidence upon which a jury could reasonably find for Plaintiff.

As to Count 8 of the Complaint, I am satisfied that Plaintiff has not produced evidence demonstrating by a preponderance that, at the time his application was rejected, his qualifications were similar in all relevant respects to those of the other FAA employees who were awarded the London and Frankfort positions. I further conclude that Mr. Soto has failed to demonstrate that the reasons expressed by the selecting officials and rating panel members for their choices of Hansen and MacDonald were a mere pretext.

Similarly, I conclude that Plaintiff has offered no evidence to support the inference that the selections of Hansen and MacDonald were motivated in any way by Soto's history of civil rights complaints. There is simply no evidence that any of the panel members were aware of Plaintiff's EEO history. Indeed, Ward's Affidavit indicates that she didn't even know what a protected EEO activity is. Rosen, in contrast, had filed and prevailed on three EEO cases premised on sexual discrimination/harassment, and had five additional cases pending at the time of her statement, all based on retaliation and sexual discrimination. (Defendant's Exhibits 20, 21). The likelihood that she would be biased against Soto for engaging in similar activity is remote.

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment be granted as to Count 8 of the Complaint.

## Count 9

Count 9 of Soto's Complaint relates to the Brussels, Belgium position discussed at some length in the previous section of this Report. Plaintiff alleges that the failure of the

Defendant to appoint him to the Brussels posting was motivated by an intention to discriminate against him based upon his Hispanic extraction and his prior involvement in the discrimination complaint process. Soto further maintains that the Defendant's actions were part of a continuing pattern and practice of discrimination and retaliation against him. Defendant's Motion for Summary Judgment should be granted as to this count in its entirety.

As stated above, the FAA did issue a Notice of Vacancy for Brussels. Mira Rosen, Defendant's Manager at that location, was a member of the three person evaluation panel, and would have been the selecting official for the Brussels job. Rosen's Affidavit states that, although she had a "potential" vacancy based upon the expiration of an incumbent inspector's second tour, that inspector was renewed for a third tour in Brussels. The undisputed evidence, then, is that none of the fourteen applicants interviewed by the committee was selected.

While I have found that Soto's claims in the previously discussed counts of his Complaint were insufficiently substantial to withstand summary judgment, I find his Count 9 claim to be nothing short of absurd. There is absolutely nothing in the record which might suggest that the extension of an incumbent employee's posting (and the rejection of thirteen applicants along with Plaintiff) represented an intent to disadvantage Soto based on his ethnicity, heritage or protected activities.

I find that Soto has failed to establish the fourth prong of a prima facie case of race/national origin discrimination. While he plainly met the minimum experience requirements for the Brussels posting, as evidenced by his inclusion among the fourteen interviewees, Plaintiff has offered no evidence to establish that his qualifications were

similar to those of the renewed incumbent who had held the position in question for two full terms at a level sufficient to warrant his extension by his direct manager for a third. In fact, I find nothing in Plaintiff's submissions in opposition to the Motion for Summary Judgment which even identifies the reappointed incumbent.

Even if Plaintiff had established a prima facie case, he has offered no evidence whatsoever to impeach the validity of Rosen's decision to retain a two term incumbent manager in the Brussels position. A plaintiff must satisfy the burden of proof on the issue of discrimination. This Plaintiff has made no effort to do so in this instance.

Soto has also failed to establish a prima facie case of retaliation. There is no evidence in this record that Rosen was aware of his history of EEO activities. There is evidence, however, to suggest that she would not have considered such activities a negative factor in her selection of a Brussels employee. Rosen's Affidavit establishes that she has initiated at least eight EEO actions. She prevailed in three, and five were pending at the time she submitted her sworn declaration in October 2003.

Not only do I recommend that Defendant's Motion for Summary Judgment be granted as to Count 9, I consider Plaintiff's claim in this Count to be so patently insubstantial as to suggest the propriety of Rule 11 Sanctions.

## Count 12

Plaintiff alleges in Count 12 of his Complaint that, following his demotion to a non-supervisory Grade 13 position at the Detroit FSDO, on or about March 1, 2003, he was denied numerous opportunities to serve in a Grade 14 position on a temporary basis. He alleges that, from June through September, 2003, nine temporary acting assignments for non-supervisory Grade 14 positions became available. Plaintiff alleges that the Defendant

denied him the opportunity to be promoted in retaliation for Soto's prior involvement in the discrimination complaint process and as part of a continuing pattern and practice of discrimination against him based on his Mexican heritage.

In response to Count 12, Defendant has offered the Affidavits of three FAA supervisory employees who served at the Detroit FSDO during the relevant time frame. Those employees are Efrain Arroyo, Thomas P. Devereaux and Steven C. Bucher.

Arroyo's Affidavit reflects that he was serving as Acting Manager of the Detroit FSDO. Arroyo was born in Puerto Rico, and he has engaged in EEO activities. Arroyo's Affidavit declares that temporary assignments for short periods of time do not require advertisement or bid. No specific selection criteria applies to such positions, and they may be filled at the discretion of the FSDO manager. Temporary positions are not filled on the basis of seniority. Rather, the assignments will normally go to an inspector who is already working on the same certificate, and who appears to the manager to be the best qualified to do the job at the time. Arroyo affirmatively declared that neither national origin nor EEO activity was a factor in any decisions made by him.

Arroyo averred that Mr. Soto was qualified for Airworthiness Maintenance Inspector positions only. Of the nine temporary promotions made during the relevant time period, four were for the position of Operations Inspector. Arroyo declared that Soto was not qualified for those jobs. Plaintiff has admitted that, between June and September 2003, he was not qualified to work as an Operations Aviation Safety Inspector. (Defendant's Exhibit 19, Item 23).

Arroyo's Affidavit reflects that Tom Weber was selected to replace Roger Beem in a PPM position on the Airborne Express Certificate. Airborne Express is the carrier for

which Soto had been Supervisory Principal Maintenance Inspector prior to his demotion. Soto was not returned to the slot in order to maintain good relations with the carrier. (Defendant's Exhibit 26).

Thomas Devereaux served as Unit Supervisor in the Detroit Flight Standards District Office. Two of the nine temporary positions were for a PMI for Spirit Airlines. John Leichty was temporarily installed in both positions, from July 13 through August 23, 2003 and from September 7 to November 15, 2003. Devereaux's Affidavit declares that Leichty had been serving as the Assistant to Mr. Carl Welke for approximately four and one-half years on the Spirit certificate. He was determined to be the best qualified to serve in the position because he was well acquainted with that certificate. Devereaux felt that Soto was not the right person for the job, based on his short time with Spirit and a lack of exposure as a PMI on that certificate. Devereaux opined that Leichty was better qualified than Soto. He further declared that neither national origin nor EEO activity was a factor in his decision making. (Defendant's Exhibit 27).

Steven C. Bucher was a supervisor at the Detroit FSDO. He was supervisor of the Principal Inspectors for two Part 121 certificates, several Part 135 carriers and several Part 145 repair stations. His unit had inspectors in all specialities: operations, airworthiness and avionics. From approximately September 21 through October 4, 2003, Bucher was out of the office. He was replaced by Mr. Orr, and it was necessary to secure a temporary replacement for Mr. Orr's regular position. Allen Wilkinson was selected for the temporary assignment. Because Mr. Orr was not physical leaving the office, he was in a position to communicate and oversee his replacement. Accordingly, Bucher consulted with Mr. Orr as to whom he thought would be best in the position. Mr. Orr suggested Wilkinson.

46

Neither Mr. Soto nor any other employee of the FSDO was discussed. Bucher checked with Wilkinson's supervisor to ensure that his workload would not be affected by the temporary change. He observed that "[w]hoever gets this type of short term position when the original inspector is still in the office must be someone who can easily communicate with the inspector . . .." He selected Wilkinson on Orr's request, noting that Wilkinson and Orr occupied adjoining offices. Bucher considered that a positive aspect of Wilkinson's selection. He further declared that Wilkinson had current experience as an FAA Principal Maintenance Inspector (PMI) on a Part 121 carrier. He had relevant experience with the Department of Defense prior to his employment by the FAA. Wilkinson was also a PMI on a smaller Part 121 carrier. The temporary promotion gave him experience as a Principal Inspector on a larger carrier. Finally, Bucher expressly declared that neither EEO activity nor national origin were factors employed by him in connection with the position in question. (Defendant's Exhibit 28).

Nothing in Plaintiff's Response to Defendant's Motion for Summary Judgment, or in his Supplemental Brief, addresses the Defendant's challenge to his Count 12 allegations. As Soto had previously occupied a Grade 14 supervisory position, I am satisfied that he has established a prima facie case. Accordingly, the burden was shifted to the Defendant to assert legitimate, non-discriminatory reasons for Soto's non-selection. I find that the Affidavits of Arroyo, Devereaux and Bucher satisfy that burden of production. Accordingly, the burden returned to Plaintiff to prove by a preponderance of evidence that the Defendant's proffered justifications were a pretext for race/national origin discrimination and/or retaliation. Plaintiff has entirely failed in that burden. The court is not obliged to search the record for evidence to support the position of a party who offers no evidence.

47

Accordingly, I recommend that Defendant's Motion for Summary Judgment be granted as Count 12 of the Complaint.

**Count 6**[7]

Count 6 of the Complaint alleges that Plaintiff was subjected to a hostile work environment at the Detroit FSDO during the period February 1998 through February 2002. Mr. Soto alleges that the hostile work environment resulted from agency managers who prohibited him from taking corrective action with respect to subordinates and allowed the same subordinates to file multiple baseless complaints against Plaintiff. He further alleges that his efforts to transfer subordinates to alleviate the hostile work environment were frustrated, and that he was prohibited from taking corrective action against the individuals in his unit. He alleges that subordinates Warner, Standring, Merrill, Dorn, Hayner and Beem filed a total of 13 union grievances against him. In addition, he asserts that a co-worker, Jennifer Sherman, provided a statement to the FSDO Manager in which she accused Plaintiff of violent behavior in the workplace. Count 6 is further based upon allegations that Detroit FSDO Manager David Hobgood made an inappropriate comment, early in 1997, regarding Plaintiff's heritage. Soto further alleges that subordinate Roland Standring used obscene language and an ethnic insult in discussing him among subordinates in March 2000, and that Standring uttered an obscenity directly to Soto in October 2001. Soto charges that his efforts to place a subordinate on an ODP were rejected, but that he was himself placed on that status by Hobgood. He complains that his

---

[7] This Report addresses Paragraphs 114 through 148 and 155 through 158 of Count 6. Paragraphs 149 through 154 were addressed in my September 26, 2005 Report in this case.

efforts to discipline Standring for the second offensive comment was also rebuffed by FAA management because there was no corroborating witness.

Defendant moves for summary judgment on the theory that the evidence in the record, viewed in its entirety, will not support a finding of a hostile work environment. Defendant argues that such a condition occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). In assessing whether the conduct alleged is sufficiently sustained and severe, the court must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. The conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive," and that the Plaintiff did subjectively regard as such. Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).

Defendant argues that Soto's claims regarding his subordinate employees' union grievances and complaints against him will not support a claim of hostile environment. The Secretary asserts that the act of filing a complaint or union grievance against a supervisor is not discriminatory harassment, even if the grievances and complaints are without merit. I agree. Plaintiff has availed himself of the employee complaint process on many occasions, and rightly asserts that such conduct should not be held against him. It is ironic, to say the least, that he begrudges his own subordinates the benefit of the same argument. In any event, there is no evidence that the complaints against Soto by his subordinate

employees were solicited or encouraged by Defendant.  It is also important to note that each and every one of the grievances was resolved in Soto's favor in the course of the standard grievance process.

The evidence relating to Hobgood's inappropriate reference to Plaintiff's ethnicity, and especially to Standring's patently offensive references to Soto's heritage is more substantial.  Nonetheless, as Defendant observes, two isolated incidents, while offensive, do not rise to the level of severe conduct required to create an objectively hostile or abusive work environment as a matter of law.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).  It is also important to note that Standring was punished for his offensive reference to Plaintiff's ethnicity.  The second offensive statement by Standring contained no ethnic content, but was simply a commonly employed profanity.  While it is true that Manager Buit took no disciplinary action against Standring for the second incident, the evidence supports his finding that there were no third party witnesses to the incident, such that Plaintiff's accusation presented a classic swearing contest.

Plaintiff has multiple issues with former Manager Hobgood.  His dissatisfaction with his manager did not, however, commence with the later's inappropriate remark.  Both the Complaint and Plaintiff's Affidavit reveal that Hobgood was critical of Soto's management style before the remark was made.  It is also apparent that several of Soto's subordinates found their relationships with him difficult.  Plaintiff offers no evidence to support his claim that Hobgood solicited negative information about Soto from other employees.  The refusal of Hobgood, and later by Buit, to authorize the transfer or discipline of subordinates with whom Soto had difficulties were plainly prerogatives vested in them by reason of their positions.  The same is true of Hobgood's placement of Soto on an ODP.

Even viewing the evidence in the light most favorable to Soto, it is necessary to recognize that numerous issues were resolved in Soto's favor. His requests for PCS benefits were ultimately approved. All subordinate grievances against him were resolved in his favor. Hobgood's initial recommendation that Plaintiff be demoted was not acted upon. Soto was selected for a position in London, although he did not ultimately transfer because of administrative difficulties. After placing Plaintiff on an opportunity to demonstrate performance (ODP), Hobgood determined that Plaintiff had demonstrated the capability to perform the duties of his position at an acceptable level, and Soto's grade increase was granted retroactively.

Viewing the number and character of the incidents upon which Plaintiff relies in making his claim of hostile work environment, together with the extended period of years over which those incidents occurred, I agree with Defendant that the evidence fails to establish harassing conduct so severe or pervasive as to establish a hostile work environment under an objective standard. Even if the contrary were true, Plaintiff has offered no evidence that the alleged conduct was undertaken "because" of his national origin or his previous EEO activity. Soto's subjective assertions of bias are not sufficient to avoid summary judgment. Nor will a mere scintilla of evidence suffice. Plaintiff must point to evidence on which a jury could find in his favor. In my view, he has not done so.

For the above stated reasons, I recommend that Count 6 of the Complaint be dismissed.

## III.  <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof

as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer<br>
DONALD A. SCHEER<br>
UNITED STATES MAGISTRATE JUDGE

DATED: January 30, 2008

---

## CERTIFICATE OF SERVICE

I hereby certify on January 30, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 30, 2008. **None.**

s/Michael E. Lang<br>
Deputy Clerk to<br>
Magistrate Judge Donald A. Scheer<br>
(313) 234-5217